UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Benjamin Carlson,

                Plaintiff,

vs.

University of Northwestern – St. Paul,

Jeff Snyder, in his individual and official capacity as Dean of Student Life of University of Northwestern – St. Paul,

Brian Sherrer, in his individual and official capacity as a campus security officer at University of Northwestern – St. Paul,

The City of Roseville, and John Does #1, #2, and #3, in their individual and official capacities as City of Roseville police officers,

                Defendants.

Case No. _____

**COMPLAINT AND JURY DEMAND**

---

For his complaint, Plaintiff Benjamin Carlson states and alleges as follows:

## JURISDICTION

1.    This is an action to redress the deprivation under color of law the rights, privileges, and immunities secured to Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States and arising under the law and/or statutes of the State of Minnesota, by Defendants, who jointly acted to deprive Carlson of his right to be

1

free from seizure and detention when he was detained and placed on an involuntary 72 hour hold, without reasonable or probable cause to believe that, at the time of his detention, he was either a danger to himself or others. In causing Carlson to be detained and held against his will without cause, Defendants not only violated, but demonstrated their deliberate indifference to, Carlson's well-settled federal civil rights, all while acting under color of state law, whether by the nature of their office or duties or whether imputed by joint action.

2. Carlson brings this action to vindicate his well-settled civil rights pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343. These statutory and constitutional provisions confer original jurisdiction of the Court over this matter.

## PARTIES

3. Carlson is 32 years old; is a citizen of the United States; and resides in the State of Minnesota.

4. At all times relevant and material to this complaint, Defendant University of Northwestern – St. Paul (UNWSP) was and is a non-profit corporation organized under Minn. Stat. 317A. Upon information and belief, its registered office and place of business is 3003 Snelling Ave N., Roseville, MN 55113.

5. At all times relevant and material to this complaint, Defendant Jeff Snyder was employed by UNWSP as its Dean of Student Life. To the extent applicable under state

2

law, Snyder was the servant, agent, and employee of UNWSP, such that his acts or omissions are imputed to UNWSP.

6. At all times relevant and material to this complaint, Defendant Brian Sherrer was employed by UNWSP as a security guard. To the extent applicable under state law, Sherrer was the servant, agent, and employee of UNWSP, such that his acts or omissions are imputed to UNWSP.

7. At all times relevant and material to this complaint, the City of Roseville was and is a duly incorporated municipal corporation and the employer of Defendants John Does 1 – 3. Its business address is 2660 Civic Center Drive, Roseville, MN 55113.

8. At all times material to this complaint, and upon information and belief, Defendants John Does 1 – 3 were duly appointed and acting as police officers in the City of Roseville's police department, were acting under color of their official capacity and color of law, and they are sued in their individual and official capacities.

## FACTUAL BACKGROUND

9. In March 2017, Carlson was enrolled as a student at UNWSP. He was in his last full year of school at UNWSP, having only to finish the spring semester and to complete an internship the following fall before graduating with a four-year bachelor's degree.

10. Prior to March 2017, Carlson suffered from mental health problems, but was being treated by mental healthcare providers.

3

11. In February 2017, Carlson had been hospitalized and released due to his mental health issues. This impacted both his schooling and campus job at UNWSP, as he was unable to during the time of his hospitalization to attend class or work at his campus job.

12. On March 13, 2017, Carlson reported to his campus job at UNWSP, working a residence hall desk. Sometime during his shift, Carlson was instructed to leave his duties, as he was apparently not yet cleared to work after his release from his February 2017 hospitalization. Carlson left his position and went to visit friends elsewhere in the residence hall.

13. Later that evening (3/13/2017) and into the early morning hours of (3/14/2017), Carlson came back to the residence hall desk where he usually worked and visited with another, female employee with whom he was acquainted.

14. Sometime that morning (3/14/2017), that same female employee reported to UNWSP officials that Carlson had had a mental health crisis the previous evening, that Carlson's conversations with her made her uncomfortable, and that during those conversations Carlson had told her that he could rape her and no one would find out. She reported that Carlson had spoken in third-person, referred to himself as a god-like person, and further physically touched her in an inappropriate fashion.

15. Carlson denied and continues to deny that any of his conversation or behavior were inappropriate and further denies any assaultive behavior or threats.

4

16. Upon information and belief, Defendant Snyder, dean of student life at UNWSP, was made aware of the allegations made against Carlson by that female student, before a previously scheduled meeting he had with Carlson.

17. On March 14, 2017, at around 10 am, Carlson attended that scheduled meeting with the UNWSP dean of student life, Defendant Snyder. Carlson recalls that Snyder arrived for it about 15 minutes late.

18. During the meeting, Snyder mentioned nothing to Carlson about the allegations against him. Instead, Snyder asked Carlson about his being ready to get back to classes (which were starting up that week, after spring break), and to get back to work. Snyder also asked Carlson about how he was feeling after his February 2017 hospitalization and what steps Carlson was taking to avoid having to be hospitalized again. Carlson responded that he was ready to go to class and work his campus job; he further explained that he was going to do all he could to stay out of the hospital and that he was going to keep taking his mental health medications.

19. The meeting concluded, and Snyder sent Carlson off to his next class. After his lunch break and time spent in the campus radio station, Carlson went to his second class that day, a radio workshop class that started at 3:10 pm.

20. After his radio workshop class concluded, Carlson stepped out of the classroom, where he was confronted by three Roseville police officers, Defendants John Does 1 – 3, the UNWSP campus security officer, Defendant Sherrer, and UNWSP's dean

5

of student life, Defendant Snyder. The three Roseville officers were uniformed and wearing their badges and utility belts, including their firearms. The UNWSP campus security officer was uniformed.

21. Carlson found himself with two of the Roseville police officers on his left and one on his left; Sherrer was ahead of Carlson, on his left, and Snyder was straight ahead.

22. The Roseville police officers told Carlson "You *have* to come with us" because he was "a danger to yourself and others." He was also told "you *have* to come with us upstairs, and you will be transported via ambulance to the hospital." Carlson was physically restrained by the Roseville police officers, with at least one of them taking a hold of Carlson's shoulder and arm as they escorted him upstairs and out of the classroom building.

23. As Carlson was being escorted through the classroom building, as well as outside, there were many, many students and others, including some of Carlson's friends, watching as he was taken into custody and walked to the waiting ambulance. It was very embarrassing to him.

24. Once they reached an ambulance outside the classroom building, Carlson was handcuffed by the John Doe officers to the ambulance gurney.

25. Carlson was then taken to a hospital, where he was held involuntarily for approximately 72 hours. He was released after that because he was not found at any time

6

during the 72 hours to be a danger to himself or others.

26.  Upon information and belief, Defendant Snyder was informed about the allegations about Carlson's conduct the previous evening before his meeting with Carlson.

27.  At some point on March 14, 2017, Defendant Sherrer, as part of his duties as a UNWSP security officer, was duly informed about the same allegations, whether by Snyder or someone else at UNWSP.

28.  Upon information and belief, Defendant Snyder determined (whether on his own or in consultation with Defendant Sherrer or others at UNWSP) to take steps to get Carlson removed from campus and transported to a hospital for a 72-hour psychiatric hold.

29.  Snyder, whether himself or via others, had Roseville police officers, including Defendants John Does 1 – 3, called to facilitate getting Carlson removed from campus and hospitalized.

30.  At or about the same time, Snyder, whether by himself of via others, had an ambulance called to the building where Carlson was in class.

31.  At no time did Defendants John Does 1 – 3 make any individualized investigation to determine and conclude that Carlson was such a danger to himself or others that he needed to be taken into custody and transported to a hospital for a psychiatric evaluation. Said officers relied entirely on what they were told by Snyder or Sherrer or both of them.

7

32. In concert with the show of force and color of law and authority of the Roseville police department's officers, Defendants John Does 1 – 3 and Defendants Snyder and Sherror, by the authority of their positions at UNWSP, all worked in concert to stop, detain, and take Carlson into physical custody and cause him to be transported to a hospital and held on a 72-hour psychiatric hold, all without any reasonable suspicion or probable cause, much less a good faith, to believe that Carlson, at that time, posed any danger to himself or others.

33. At no time on March 14, 2017, when he was at UNWSP for both his meeting with Snyder and his two classes, as well as the time in between his classes, was Carlson either a present danger to himself or others.

34. Carlson was subsequently given a no trespass letter and suspended indefinitely from UNWSP, meaning that he effectively could do nothing to get a degree from UNWSP.

35. In order to get a four-year bachelor's degree, he had to enroll in another college/university and complete the equivalent of another two years of full-time schooling. To do so, he had to pay more in tuition, fees, and housing costs than he otherwise would have had he been allowed to complete his degree at UNWSP.

## COUNT 1 – DEPRIVATION OF CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. SEC. 1983 BY DEFENDANTS SNYDER, SHERRER, AND UNWSP

Plaintiff re-allege paragraphs 1 – 35 as if fully stated herein and further states and alleges:

36. Defendant UNWSP, through and by its agents, Defendants Snyder and Sherrer, instigated and otherwise caused Defendant John Does 1 – 3 to act under the color of law and authority to seize and detain Carlson and have him involuntarily transported to and held at a hospital for a 72-hour psychiatric hold, without any reasonable or good faith basis to believe Carlson was, at that time, a danger to himself or others.

37. Carlson was seized and detained also due to the active participation in the same by Defendant UNWSP, through and by both its agents Defendants Snyder and Sherrer, and by both of them individually and by the authority of their positions at UNWSP.

38. Defendant UNWSP, through and by both of its agents Defendants Snyder and Sherrer, and by both of them individually and by the authority of their positions at UNWSP, by virtue of their active participation in the seizure and detention of Carlson, were all therefore agents for the Roseville police department, including Defendants John Does 1 – 3. As a result, their actions also were taken under color of law and deprived Carlson of his constitutional rights to be free from unreasonable search and seizure when they stopped, seized and restrained Carlson and caused him to be detained and hospitalized for a 72-hour psychiatric hold, all without any individualized reasonable suspicion or probable cause, much less a good faith, to believe that Carlson, at that time, posed any

danger to himself or others.

39. These clearly established rights to be free from unreasonable search and seizure are secured to Carlson by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, as well as under Minnesota law.

40. Because their actions arose in the course and scope of their employment, UNWSP is also liable for the acts or omissions of Defendants Snyder and Sherrer under the doctrines of agency or respondeat superior.

41. As a direct and proximate result of Defendants UNWSP's, Snyder's and Sherrer's unconstitutional seizure of him, Carlson suffered compensable damages for the mental and emotional anguish, pain and suffering, and pecuniary loss he has endured, the exact amount of which will be proven at trial.

Plaintiff demands relief as set forth below.

## COUNT 2 – DEPRIVATION OF CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. SEC. 1983 BY JOHN DOES 1 – 3

Plaintiff re-allege paragraphs 1 – 41 as if fully stated herein and further states and alleges:

42. Defendants John Does 1 – 3, while acting under color of law, and in conspiracy with Defendants UNWSP, Snyder and Sherrer, deprived Carlson of his constitutional rights to be free from unreasonable search and seizure when they stopped, seized and restrained Carlson and caused him to be detained and hospitalized for a 72-hour psychiatric hold, all without any individualized reasonable suspicion or probable cause,

10

much less a good faith, to believe that Carlson, at that time, posed any danger to himself or others.

43. These clearly established rights to be free from unreasonable search and seizure are secured to Carlson by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, as well as under Minnesota law.

44. As a direct and proximate result of Defendants John Doe's 1 – 3's unconstitutional seizure of him, Carlson suffered compensable damages for the mental and emotional anguish, pain and suffering, and pecuniary loss he has endured, the exact amount of which will be proven at trial.

Plaintiff demands relief as set forth below.

## COUNT 3 – FAILURE TO INTERVENE IN VIOLATION OF 42 U.S.C. 1983

Carlson re-alleges paragraphs 1 – 44 as if fully stated herein and further states and alleges:

45. All the individual Defendants violated Carlson's clearly established rights by failing to intervene and stop the constitutional violations being committed by the other Defendants, despite having a meaningful opportunity to do so. By failing to intervene when they had actual knowledge of the unconstitutional conduct, as well as a realistic and reasonable opportunity to intervene in a meaningful way, these Defendants acquiesced in the others' actions and/or omissions.

46. These actions and/or omissions constitute unreasonable search and seizure, in violation of Carlson's rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

47. As a direct and proximate result of their failure to intervene, Defendants caused Carlson to suffer compensable damages for the pain and suffering, and mental and emotional anguish, and pecuniary loss he has endured, the exact amount of which will be proven at trial.

Plaintiff demands relief as set forth below.

## COUNT 4 - *MONELL* AND *CANTON* CIVIL RIGHTS VIOLATIONS BY CITY OF ROSEVILLE

Carlson re-alleges paragraphs 1 – 47 as if fully stated herein and further states and alleges:

48. Upon information and belief, before March 14, 2017, Defendant City of Roseville and its police department tolerated, permitted, and failed to correct a pattern or practice on the part of its officers, including the Defendants John Does #1 – 3, of unjustified, unreasonable, and illegal seizure of individuals for transport to a health care facility for a psych hold, based not on any individualized investigation, assessment, or observation by the officers that the subject was a present danger to himself or others, but instead based on a mere allegation made by others. In so doing, the City of Roseville and its police department established and maintained a custom of deliberate indifference to any earlier complaints about the illegality of such seizures, or the failure to intervene, by

its police officers to prevent such seizures.

49. The City of Roseville and its police department, with deliberate indifference to the rights of its citizens, took no steps to appropriately or adequately train, discipline, terminate the employment of, or otherwise correct the improper conduct its police officers engaged in similar conduct, as well as officers who failed to intervene.

50. As of March 14, 2017, Defendant City of Roseville and its police department knew, or should have known, that it maintained a custom and policy of allowing its police officers to continue to illegally seize persons for 72-hour psych holds without reasonable or probable suspicion or cause to believe they were a danger to themselves or others, as well as to continue to fail to intervene when there was opportunity to do so to either prevent unconstitutional conduct or minimize the damages that may otherwise result therefrom.

51. Continuing to employ these officers, including Defendant John Does 1 – 3, and/or failing to train or discipline them, created a much greater risk for this illegal behavior, and this fact was known or should have been known to the City of Roseville and its police department.

52. As a direct and proximate result of the aforesaid acts and omissions, systemic flaws, policies, and customs of the Defendant City of Roseville and its police department, including its failure to adequately train its officers, including Defendant John Does 1 – 3, on the constitutional limitations on their seizure of persons for 72-hour psych holds and/or the need to intervene, Defendant John Does 1 – 3 illegally, wrongfully, and

unconstitutionally seized Carlson without reasonable or probable suspicion or cause when encountering Carlson to believe that he was either a danger to himself or others.

53. The customs, policies, and/or practices of the City of Roseville and its police department of being persistently and deliberately indifferent towards civil rights violations by its police officers, as well as the failure to train said officers, was the moving force behind Defendant John Does 1 – 3 unconstitutional seizure of Carlson, and the other officers' failure to intervene to prevent the same.

54. As a direct and proximate result of those customs, policies, and practices, as well as the failure to train, Carlson was made to suffer compensable damages arising out of his seizure and subsequent involuntary 72-hour psych hold at a hospital on March 14, 2017.

Plaintiff demands relief as set forth below.

**PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL ISSUES OF FACT.**

**WHEREFORE,** Plaintiff Benjamin Carlson request judgment as follows:

a. awarding compensatory damages in an amount exceeding $75,000.00;

b. awarding punitive damages against the individual Defendants and Defendant University of Northwester – St. Paul under Counts 1, 2 and 3, which are available for § 1983 claims against individual Defendants as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983), in an amount exceeding $500,000.00, the exact amount to be determined at trial;

 c.  awarding Plaintiff his costs and disbursements, including reasonable attorney's fees as may be allowed by law or otherwise; and

 d.  granting such other relief as the Court may deem just and equitable.

Dated: March 10, 2023     By: _____
              Scott W. Swanson (MN 0241283)
              ATTORNEY-AT-LAW
              First National Bank Building
              332 Minnesota Street, Suite W1610
              St. Paul, MN 55101
              PH: (651) 338-6551
              scott.swanson.esq@gmail.com

              *Attorney for Plaintiff*