## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| Benjamin Carlson, | Case No. 23-CV-00577 (JMB/ECW) |
| Plaintiff, | |
| v. | |
| University of Northwestern – St. Paul; Jeff Snyder, *in his individual and official capacity as Dean of Student Life of University of Northwestern – St. Paul*; Brian Sherrer, *in his individual and official capacity as campus security officer at University of Northwestern – St. Paul*; The City of Roseville; John Does #1, #2, #3, *in their individual and official capacities as City of Roseville police officers*; | **ORDER** |
| Defendants. | |

Scott W. Swanson, Swanson Law Firm, PLLC, St. Paul, MN, for Plaintiff Benjamin Carlson.

Kathryn M. Nash and Richard C. Landon, Lathrop GPM LLP, Minneapolis, MN, for Defendants University of Northwestern – St. Paul, Jeff Snyder, and Brian Sherrer.

Ryan M. Zipf, League of Minnesota Cities, St. Paul, MN, for Defendants City of Roseville and John Does #1, #2, and #3.

Plaintiff Benjamin Carlson brings this action against Defendant University of Northwestern – St. Paul (UNW) and two of its employees, Defendants Jeff Snyder and Brian Sherrer, (together, the UNW Defendants), as well as Defendant City of Roseville and three of its police officers, for alleged civil rights violations that occurred during an encounter between Carlson, Snyder, Sherrer, and police officers in 2017. (*See* Doc. No. 1

1

[hereinafter, "Complaint"].)  The UNW Defendants move to dismiss Counts I and III of the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (*See* Doc. No. 27.)  For the reasons discussed below, the Court grants the UNW Defendants' motion and dismisses Counts I and III.

## BACKGROUND

UNW is private university in Roseville, Minnesota.  (Compl. ¶ 4.)  At all relevant times, Snyder was the Dean of Student Life and Sherrer was a security guard at UNW.  (*Id.* ¶¶ 5, 6.)  Carlson is a Minnesota resident who was a student at UNW when the events alleged in the Complaint occurred.  (*Id.* ¶¶ 3, 9.)

In February 2017, Carlson was hospitalized due to mental health issues.  (*Id.* ¶ 11.) On March 14, 2017, following Carlson's discharge from the hospital, a student reported to UNW officials that Carlson had experienced a mental health crisis the night before.  (*Id.* ¶¶ 12–14.)  The student reported that, during the crisis, Carlson told her that he would rape her and no one would find out, that he spoke in the third person and referred to himself as god-like, and that he had touched her inappropriately.  (*Id.* ¶ 14.)  Snyder and Sherrer were both made aware of the student's report.  (*Id.* ¶¶ 26–27.)

Later that day, Snyder, Sherrer, and three Roseville police officers confronted Carlson as he left a classroom.  (*Id.* ¶¶ 20–21.)  The police officers told Carlson that he had to go with them because he was a danger to himself and others.  (*Id.* ¶ 22.)  The officers then physically restrained and escorted Carlson out of the academic building, where they then handcuffed him to an ambulance gurney.  (*Id.* ¶¶ 22–24.)  Carlson was transported to the hospital and placed on a seventy-two-hour involuntary psychiatric hold.  (*Id.* ¶¶ 25, 28.)

Carlson alleges that the UNW Defendants became "agents for the Roseville police department" through their "active participation" with the police officers. (*Id.* ¶ 38.) He further alleges that Snyder, on his own or in consultation with others, such as Sherrer, called the police, called for an ambulance, and provided information to the responding police officers. (*Id.* ¶¶ 28–31.) Carlson also alleges, in a conclusory manner, that the police officers did not perform "any individualized investigation" but, instead, "relied entirely on" the information the UNW Defendants provided to determine that Carlson needed to be taken into custody and transported to the hospital. (*Id.* ¶ 31.) Carlson raises the following claims under 42 U.S.C. § 1983: that the UNW Defendants deprived him of his Fourth Amendment rights (Count I); that the Roseville police officers or deprived him of his Fourth Amendment rights (Count II); that Snyder, Sherrer, and the police officers failed to intervene to stop the civil-rights violations being committed against him by others (Count III); and that the City of Roseville is liable for such constitutional violations under *Monell*/*Canton* (Count IV). (*See id.*)

## DISCUSSION

The UNW Defendants now move to dismiss Counts I and III on grounds that Carlson has failed to state a plausible claim for relief. The Court grants the motion for the two reasons discussed below.

First, the Court considers Carlson's failure to respond to the motion. Such inaction constitutes abandonment of the claims implicated by the motion. *See Zimmerschied v. JP Morgan Chase Bank, N.A.*, 49 F. Supp. 3d 583, 590–91 (D. Minn. 2014) (interpreting a plaintiff's "concession that six of her claims [were] overreaching, accompanied by her

failure to respond to the motion to dismiss with respect to those claims, as a voluntary abandonment"); *see also Foxpoint Ventures, Inc. v. Vegalab, Inc.*, No. 20-CV-2011 (NEB/ECW), 2021 WL 6777601, at *2 n.1 (D. Minn. Mar. 22, 2021) (observing that party's failure to respond to argument in motion to dismiss constitutes a waiver or abandonment of argument or claim). The Court grants the UNW Defendants' motion given Carlson's failure to respond to it.

Second, even assuming that Carlson had not abandoned Counts I and III, the Court concludes that the factual allegations in the Complaint fail to state a section 1983 claim against private actors.

As a threshold matter, when addressing motions to dismiss brought under Rule 12(b)(6), courts consider all facts alleged in the complaint to be true and then determine whether it states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A pleading has facial plausibility when its factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In this analysis, the Court construes the allegations and draws inferences from them in the light most favorable to the plaintiff. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018). However, the Court will not give the plaintiff the benefit of unreasonable inferences, *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010), and is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Section 1983 claims are typically viable only when raised against state actors. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (observing that section 1983 "secures most constitutional rights from infringement by governments, not private parties"); *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001) ("Only state actors can be held liable under Section 1983.") (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). Private actors who participate in "joint activity" with state actors, however, can be liable under section 1983. *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009) ("A private party may be held liable under § 1983 . . . if it is a willful participant in joint activity with the State or its agents.") (quotation omitted).

In order for Carlson to state a "joint activity" claim under section 1983, he must plausibly allege "that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor regarding the violation of plaintiff's constitutional rights." *Magee v. Trs. of the Hamline Univ., Minn.*, 957 F. Supp. 2d 1047, 1057–58 (D. Minn. 2013) (quotation omitted), *aff'd*, 747 F.3d 532 (8th Cir. 2014). A plaintiff's "[m]ere allusion to such a conspiracy" is not enough to satisfy this requirement; rather, the plaintiff must describe the meeting of the minds with both "specificity and factual support." *Id.* at 1058; *see also Magee*, 747 F.3d at 537 (noting that a plaintiff must allege "facts that the two entities acted in concert"); *Holbird v. Armstrong-Wright*, 949 F.2d 1019, 1020 (8th Cir. 1991) (affirming dismissal of section 1983 "joint activity" claim because, among other things, plaintiff's allusion to conspiracy was insufficient to state claim). Courts have concluded that a private party can be "acting jointly with police when the police will detain

5

[an] accused . . . without making an independent investigation . . . or pursuant to a customary plan between the [private party] and the police department." *See Murray v. Wal-Mart, Inc.*, 874 F.2d 555, 559 (8th Cir. 1989) (citations omitted) (holding that private retailer had a common practice of "work[ing] with the police department in prosecuting shoplifters" permitting imposition of liability for "joint activity" claim under section 1983).

The Court agrees with the UNW Defendants that the factual allegations in the Complaint are not sufficient to state a "joint activity" claim because neither the allegations themselves—nor any reasonable inferences that the Court can make based on those allegations—support a conclusion that the UNW Defendants were acting under the color of state law. The bulk of Carlson's specific allegations concern the confrontation that occurred outside the classroom between Carlson and the responding police officers, which ultimately led to his removal from campus and subsequent hospitalization. (Compl. ¶¶ 20–25.) For instance, Carlson alleges that Snyder "himself or via others, had Roseville police officers . . . called to facilitate getting Carlson removed from campus and hospitalized" and "had an ambulance called to the building where Carlson was in class." (*Id.* ¶¶ 29–30.) In addition, Carlson alleges that Snyder and Sherrer were present when the police officers confronted Carlson after class. (*Id.* ¶ 21.) These allegations, however, do not describe a customary plan or common practice between the UNW Defendants and the police officers. *Cf. Young v. Harrison*, 284 F.3d 863, 870 (8th Cir. 2002) (holding that evidence that security guard called the police was not enough support the proposition that he had acted jointly with the police); *Mershon v. Beasley*, 994 F.2d 449, 452 (8th Cir.1993) (concluding that "contacts, by themselves and without more" do not allow the inference of "any mutual

6

understanding" necessary for section 1983 liability); *Harris v. Maplewood Police Dep't*, No. 17-CV-392 (MJD/SER), 2018 WL 3627404, at *2–3 (D. Minn. June 18, 2018) (distinguishing *Murray* and dismissing section 1983 claims against private actors because the mere act of calling the police was not enough to turn the private actor's behavior into state action); *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1049–50 (D. Minn. 2010) ("A private party does not conspire with government actors for purposes of § 1983 merely by invoking an exercise of the state official's authority.") (quotation omitted).

Further, the Complaint does not identify any investigatory steps that the responding police officers failed to take as a result of the UNW Defendants' activity. Absent additional factual allegations, Carlson does not plausibly allege facts to support the mutual understanding or meeting of the minds necessary to state a "joint activity" claim under section 1983.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.  Defendants University of Northwestern – St. Paul's, Jeff Snyder's, and Brian Sherrer's Motion to Dismiss (Doc. No. 27) is GRANTED; and

2.  Counts I and III of the Complaint as to University of Northwestern – St. Paul, Jeff Snyder, and Brian Sherrer are DISMISSED WITHOUT PREJUDICE.

Dated:  July 22, 2024                                /s/ *Jeffrey M. Bryan*
                                                      Judge Jeffrey M. Bryan
                                                      United States District Court